RAFAEL VÉLEZ MALDONADO, Plaintiff and Appellee, v. ANDRÉS LUIS SAN MIGUEL, Defendant and Appellant.

No. 9609. Argued March 8, 1948.—Decided April 9, 1948.

535

E. *Martínez Rivera* and *Luis Blanco Lugo* for appellant. *Diego O. Marrero* for appellee.

Mʀ. Justice Snyder delivered the opinion of the Court.

The plaintiff purchased a house on September 14, 1946, intending to live in it himself. On October 1, 1946 he obtained from the OPA a certificate, then required by Federal law and regulations, which authorized him to institute a proceeding in accordance with local law, not sooner than January 23, 1947, to evict the defendant, lessee of the former owner. On March 24, 1947 the plaintiff filed an unlawful detainer suit in the district court to oust the defendant. This is an appeal by the defendant from a judgment for the plaintiff on the ground that the district court lacked jurisdiction.

Pursuant to § 1461 of the Civil Code, the plaintiff was entitled to terminate the lease of the defendant with the former owner when he purchased the house. Under § 622 of the Code of Civil Procedure in such a case jurisdiction is in the district court, except that the municipal court has jurisdiction if the purchaser and the defendant had entered into a new lease contract in which the rental did not exceed $1,000 annually. *Miranda* v. *Jarabo,* 64 P.R.R. 855.

■ The appellant contends that there was such a new contract between the plaintiff and defendant in this case at a rental of $22 a month and that jurisdiction was therefore in the municipal, not the district, court. This contention is based on the fact that for the months of August to November 1946 the defendant sent checks to the plaintiff for $22 monthly which stated they were ''payment of rent'' and the plaintiff issued receipts therefor indicating they were for ''rent of the house in Alameda Bo. No. 30''.

At the time involved herein, a tenant at sufferance could not be evicted without an OPA certificate. *Sais* v. *Gorbea,* 66 P.R.R. 33. Consequently, between September 14, 1946 and January 23, 1947, the plaintiff by fiat of Federal law could not oust the defendant. But this did not change the status of the defendant as a tenant at sufferance while he was in possession until the OPA certificate went into effect. ''Due to the emergency conditions created by the war, the Federal and Insular Governments . . . [undertook] by fiat of law to protect possession of housing facilities, and to require certain conditions to be met, before such possession . . . [could] be terminated. But we find nothing in these statutes which operate[d] to create private contractual relations between parties who have never so agreed.'' *Miranda* v. *Jarabo, supra,* 857–8.

■ Manresa, *Comentarios al Código Civil,* 4th ed., Vol. 10, p. 575, points out that the new owner may ''by his express acts'' enter into a contract with the tenant of the former owner to continue the old lease in force. But we find no such express acts by the plaintiff here. On the contrary, the latter made it clear that he wished to terminate the lease. It is true he accepted money as ''rent''. But that is not in itself conclusive here on the issue of whether the parties entered into a new lease contract. The so-called ''rent'' may

have actually been rent under a new lease or it may have been compensation for use of the house while the defendant continued to occupy it.

In seeking to determine whether the parties entered into a new contract, we must remember that by virtue of Federal law the plaintiff could not evict the defendant for several months. During that period, while he was waiting for the certificate of eviction to go into effect, he could collect rent as such. *Escudero* v. *District Court*, 65 P.R.R. 538. And in the same way, if no lease contract existed for that period, the plaintiff was entitled to compensation from the defendant for use of the property and could sue therefor. *Ball* v. *Vilá*, 67 P.R.R. 388. As the defendant was liable for use of the property, compensation therefor could be collected from him —either by suit or voluntary payment—during the period of possession. There is no reason in law or logic which compels us to hold that collection of this debt, admittedly due, had to be postponed until after ouster of the defendant, by which time collection might be highly uncertain.

We need not determine if the bond which the defendant was probably required to post in order to appeal herein would cover compensation for use of the property for October and November 1946, if the defendant had not voluntarily paid therefor. Cf. *Pratts* v. *District Court*, 66 P.R.R. 2; *Vivas* v. *Petrilli*, 66 P.R.R. 617. Even if we assume, without deciding, that the bond did apply to this period, the fulfillment by the defendant of the requirement that a bond must be posted has no bearing on whether the plaintiff by an "express act" has continued the old lease in force or entered into a new lease. Under the circumstances of this case, the bond, at the most, guaranteed payment for compensation for use. Acceptance of money for use, instead of waiting to proceed against the bond, was not an "express act" by the plaintiff resulting in a contract between him and the defendant.

We think the reasoning found in *López* v. *District Court*, 67 P.R.R. 163, applies herein. In the *López* case the People filed a suit to condemn certain real estate. The defendant, who was in possession, agreed with the People to vacate the premises on a certain date and meanwhile to pay a certain sum as "rent" therefor. The defendant failed to vacate the property on the agreed date, and the People filed a motion within the condemnation proceeding praying for an order to oust the defendant. The latter objected on the ground that the acceptance of "rent" from the petitioner had created the relationship of landlord and tenant between them and that the defendant therefore could not be ousted within the condemnation proceeding but only by an independent unlawful detainer suit.

Our condemnation statute gives the district court authority to fix (1) the period within which to vacate and (2) the amount of compensation to the State for use during that period. We held in the *López* case that agreement of the parties on these two questions took the place of an order to that effect. And we said at p. 165:

"If no rent is paid and an occupant refuses to move from a condemned property, it certainly could not be contended that ouster must be by unlawful detainer suit rather than within the condemnation proceeding. The fact that the occupant is required to pay rent during this period—and certainly he should not be entitled to use the property gratis—does not change his status. Here the Authority was careful from the beginning to emphasize that it was not leasing the property but was only permitting the petitioner to remain there until he could conveniently leave. On motion of the People the court would have entered an order to the same effect, including a requirement that the petitioner pay for such use of the property. The fact that the parties agreed and therefore no court order was needed did not change the nature of their relationship. The rent was not for use under a lease contract, but only to compensate the People for use of the property while it waited for delivery thereof within the condemnation proceeding."

It is true that in the *López* case the court had authority to order payment for use without a new contract between the parties. But that would not prevent the People, if it chose, from entering into a new lease with the tenant of the previous owner. The "rent" paid could therefore be either for use or by virtue of a new lease, depending on the agreement between the parties. Viewed in that light, the principle involved in the *López* case is not different from that involved herein. In the *López* case if the money was paid for use of the property while awaiting delivery thereof, the order of ouster could be entered within the condemnation proceeding; on the other hand, if it was paid as rent under a new lease, an independent unlawful detainer suit was required. In the same way, here payment of compensation for use did not disturb the jurisdiction of the district court, while payment under a new lease of "rent" not exceeding $1,000 annually would have vested the municipal court with jurisdiction. And in both cases calling the money paid "rent", is not in itself conclusive. Rather the question is whether there was any consent by the plaintiff to a new contract.

This is an *a fortiori* case under the reasoning of the *López* case. Here the plaintiff had no choice. He was compelled by Federal law to permit the defendant to remain on the property during the months of October and November. In the *López* case, while the court had the authority to enter an order, actually the plaintiff voluntarily permitted the defendant to remain on the property for a definite period after condemnation. In both cases the plaintiff was admittedly entitled to compensation from the defendant for use of the property. In both cases the parties labelled the money paid by the defendant as "rent". This label was not held decisive in the *López* case. It cannot be held decisive here. Indeed, in the *Ball* case we permitted a landlord to recover for use after ouster, despite the allegations of his complaint that the sum claimed was for "rent". If parties are not bound

by their inaccurate labels in formal pleadings drawn by their attorneys, *a fortiori* their own inaccurate informal labels on receipts and checks should not, standing alone, bind them.

In the *López* case, the plaintiff was not held bound by the mislabelling of the compensation for use of the property as "rent", in view of the fact that it "was careful from the beginning to emphasize that it was not leasing the property but was only permitting the [tenant] . . . to remain there until he could conveniently leave". Here the plaintiff also mislabelled as "rent" money he accepted for use of his property; and likewise he was just as careful as the plaintiff in the *López* case to demonstrate by all his actions that the old lease was being terminated and was not being replaced by a new lease. It seems clear both in the *López* case and here that under all the circumstances the parties did not intend a new contract but rather intended the money paid by the defendant to the plaintiff to be compensation for use of the property.

In the instant case, after acquiring the property, the plaintiff notified the defendant of his purpose to take possession thereof. Consistent at all times with this purpose, he obtained the certificate of eviction from the OPA and opportunely filed the complaint to oust the defendant. Those were explicit acts which indicated that there was to be no new contract. We agree that if the plaintiff had not taken any of these steps, and had confined himself to accepting money from the defendant which both parties called "rent", a new contract between the plaintiff and the defendant would have been effectuated. But these other events did take place. And they show unmistakably that no new contract was envisaged by the parties. Instead, while the plaintiff waited for possession of his property, he accepted money to which he was entitled for its use. We see no difference between acceptance of such money and the receipts by the plaintiff after final judgment of money consigned in court as "rent". Despite

the fact that such money is consigned as "rent", it has never occurred to anyone to object to the receipt thereof by a plaintiff on the ground that he was not entitled to "rent" from someone with whom he had no lease.

The fact that the compensation for use was the same amount as the defendant was paying as rent to the previous owner likewise did not create a contract between the plaintiff and the defendant. In this connection, our language in *Ball* v. *Vilá, supra,* p. 390, is pertinent: "We agree that the contract for paying a rental of $80 monthly terminated on March 8, 1944 and that appellee can only recover the reasonable value of the use of the house. But the parties did not introduce any evidence tending to prove that the amount of $80 monthly was not the reasonable value of said use. Since it appears from the pleadings of both parties that appellant had been paying that amount by virtue of the lease contract which she had with the former owner which was continued with appellee, the finding of the lower court that the reasonable value of the use of the house was $80 monthly was correct."

In a judgment and opinion dated January 22, 1948 this Court reversed the judgment of the district court in this case. That opinion relied on language in some of our cases indicating that the mere acceptance of money which the parties characterize as "rent", without more, results in a new lease contract between the purchaser of a house and the lessee of the former owner, despite any other overriding considerations. See, for example, *Flores* v. *Delgado,* 34 P.R.R. 745, 746; *Cuesta* v. *Ortiz,* 29 P.R.R. 460; *Cerra* v. *González,* 29 P.R.R. 270. As we are satisfied that this language is erroneous, it will no longer be followed.

We do not stop to determine if *Morales* v. *Martínez et ux,* 40 P.R.R. 695, and *Del Toro* v. *Juncos Central,* 29 P.R.R. 21, (see also 3 Williston, § 687, p. 1981), are in point and were correctly decided. It will be time enough to pass on that question when an appropriate case arises. Meanwhile, we

make only two points. The first is that in those cases a lease between the parties already existed; and the question was merely whether, after breach of the lease by the tenant, acceptance of rent—not money for use, but rent in the technical sense—waived the breach. Here no previous lease between the parties existed. On the contrary, we are asked to spell out the creation of a lease by virtue of the sole act of money paid, not as rent in the technical sense but for use of the property, in the face of other facts clearly showing that no contract existed between the parties. The second point is that even where a lease already exists, perhaps these two cases should not be controlling and the rule should be that acceptance of money will not condone a prior breach, provided it is made clear that the money is accepted as compensation for use, and not as rent. The latter point would be based on the argument that breach or no breach, a landlord is entitled ultimately to compensation for use of his property; and no purpose is served by forcing such a landlord to wait to collect for such use until after ouster when collection may be difficult or impossible. We repeat that we leave this question open. Indeed, this paragraph would not be in this opinion, except for the fact that the *Morales* and *Del Toro* cases are discussed in the dissenting opinion.

It is true, as the dissenting opinion points out, that the only question involved in this case is the jurisdiction of the district court. But the importance of our decision lies precisely in the *ratio decidendi* of this opinion; namely, the acceptance of money for use of property does not in itself create a new lease contract between the purchaser of a house and the tenant of the former owner when all the other circumstances point to a contrary result.

We quite agree with the dissenting opinion in applying to the circumstances herein the comment in *Morales* v. *Martinez et ux, supra,* p. 699, that legal consequences flow from what one does, not from what one says. But we submit that

here the parties said that "rent" was being charged, whereas everything they did pointed to termination of the old lease, refusal to enter into a new lease, and acceptance of compensation merely for use of the property and not as rent pursuant to a new lease.

For the reasons stated herein, we conclude (1) the plaintiff did not enter into a contract with the defendant; (2) the defendant was therefore a tenant at sufferance; and (3) consequently, the district court was correct in holding that the case was properly filed in the district court.

In view of these conclusions, the motion for reconsideration will be granted, our judgment and opinion of January 22, 1948 reversing the district court will be set aside, and the judgment of the district court will be affirmed.

---

MR. JUSTICE TODD, JR., with whom MR. JUSTICE MARRERO concurs, dissenting.

In the complaint of "unlawful detainer" filed by Rafael Vélez Maldonado in the District Court of San Juan it was alleged, in brief, that he purchased a house in Santurce for the purpose of living in it together with his family; that he notified the defendant, who was the lessee of the former owner, that he needed the house for said purpose in good faith; that he considered the contract lease terminated and asked him to vacate the house not later than January 23, 1947, according to the certificate of eviction which he obtained from the Rent Division of the Office of Price Administration of Puerto Rico and that notwithstanding said request the defendant has not vacated the house.

The defendant alleged in his answer, especially, that the plaintiff acknowledged and renewed the former contract of lease because he had received and accepted the payment of lease rentals for October and November, 1946 and that since the amount of this monthly rental was $22, the court lacked

jurisdiction inasmuch as the annual rental did not exceed $1,000.

The lower court granted the complaint and held that since according to our ruling in *Escudero* v. *District Court,* 65 P.R.R. 538, there is nothing in the Emergency Price Control Act or in the Regulations approved for its execution "barring the owner from collecting the lease rentals until such time as the lease expires and he institutes the unlawful detainer proceeding after the certificate becomes effective", the fact that the owner of a property occupied by a tenant of a former owner accepts rentals which become due prior to the date of the effectiveness of a certificate, does not operate to create a new contract between the parties or to divest the lessee of his character of *detentador,* (unlawful occupant), inasmuch as a contract can not exist without the consent of the parties. It also cited *Miranda* v. *Jarabo,* 64 P.R.R. 855, wherein we held that when the purchaser brings an action to evict the lessee of the former owner jurisdiction lies in the district court.

The only error assigned by appellant is to the effect that the lower court erred in deciding that it had jurisdiction to take cognizance of the case.

Although it is true that in *Escudero* v. *District Court, supra,* we held that there was no provision in the "Emergency Price Control Act" or its Regulations barring the purchaser of a house leased by the former owner from collecting the lease rentals until such time as the lease expires and he institutes the unlawful detainer proceeding after the certificate issued by the Rent Division becomes effective, this case is no authority to decide that the jurisdiction to take cognizance of an unlawful detainer case always lies in the district courts. On the contrary, the facts in the *Escudero* case show that the action was begun precisely in the Municipal Court of San Juan.

Neither does *Miranda* v. *Jarabo, supra,* expressly decide that *when lease rentals are collected* by the purchaser of a leased house, the jurisdiction in the unlawful detainer proceeding instituted by the new owner against the lessee lies in the district courts. As a matter of .fact in *Miranda* v. *Jarabo, supra,* the lease rentals were not collected. Appellant maintained in said case that he was not an unlawful occupant—a *detentador*—of the property, but that he occupied the house on a contract with consideration, of less than one thousand dollars annually and therefore jurisdiction lay in the municipal court, and, further, that Act No. 14 of 1941 (Special Session Laws, page 44) and the O.P.A. Regulations had the legal effect of extending the contract of lease. Both questions were decided adversely to appellant. The first, because according to the cases of this Court, when the purchaser terminates the contract of lease which the lessee had with the former owner and brings an action of unlawful detainer, the jurisdiction lies in the district court, and the second, because the insular act and the federal regulations do not purport to create private contractual relations.

The case at bar is different. The question raised by appellant is whether notwithstanding plaintiff having terminated the contract of lease which defendant had with the former owner, the fact that he continued to receive the lease rentals, is equivalent to an acknowledgment or a renewal of said contract so that the defendant cannot be considered a *detentador* and, therefore, the jurisdiction in the action of unlawful detainer lies in the municipal court because the annual rental is less than one thousand dollars. The facts admitted by the parties show that the defendant paid plaintiff the lease rental up to the month of November, 1946 and that the latter accepted them, because, as he stated, in the Office of Price Administration he was told to do so. The rental for December, 1946 was not paid and the action of unlawful detainer

was brought on January 23, 1947, on which date the certificate of eviction became effective.

What was the legal effect, if any, of plaintiff's acceptance of the lease rental subsequent to the time that he purchased the house sought to be vacated? In a similar case we have decided that "The essential thing for the defendant was to try to show that when the said property passed to the plaintiff by title of purchase he *assumed the continuation of the lease by collecting an instalment from the defendant."* (Italics ours.) *Flores* v. *Delgado,* 34 P.R.R. 745, 746. In that case, because that fact was not proved, it was held that the possession by the defendant was equivalent to tenancy at sufferance and the court with jurisdiction was the district court. This question has been repeatedly settled by this Court in construing § 1461 of the Civil Code (1930 ed.).[1] *Sosa* v. *Río Grande Agrícola Co., Ltd.,* 17 P.R.R. 1106; *Angleró* v. *Fernández,* 31 P.R.R. 249; *Cuesta* v. *Ortiz,* 29 P.R.R. 460; *Miranda* v. *Jarabo, supra.*

Commenting § 1571 of the Spanish Civil Code, (equivalent to our § 1461), Manresa says:

"But according to the decisions applicable to § 1571 it is a necessary requirement for the purchaser to express his unwillingness to continue the contract had with the former owner, and therefore, *if instead of taking this attitude, the new owner shows by express acts his intention of continuing the contract in force, he can not, subsequently, relying on the special provision of said section, bring* the action of unlawful detainer, save for the presence of some of the requirements enumerated in § 1569 of the same Code and its concomitants in the Law of Civil Procedure (Judgment of February 28, 1913)." (Italics ours.) Manresa, *Comentarios al Código Civil,* 4th ed. Vol. 10, p. 575.

---

[1] The first paragraph of § 1461 provides: "The purchaser of a leased estate has a right to terminate the lease in force at the time of making the sale, unless the contrary is stipulated, and the provisions of the Mortgage Law prevent."

The fact that the plaintiff accepted the payment of several monthly rentals [2] was equivalent to continuing the contract, notwithstanding his previous notice terminating it. As stated in *Flores* v. *Delgado, supra,* he "assumed the continuation of the lease." By this action the effect of the previous notice was limited to terminate the contract, not when plaintiff purchased the property but at the time the certificate became effective.

It may be argued that since the rental for December, 1946 was not paid and the action was brought on January 23, 1947, the defendant was a *detentador* of the house. We have decided to the contrary. Since the plaintiff assumed the continuation of the lease by accepting the payment of the rentals and by issuing the receipts for the rent, upon the failure to pay the December rent, plaintiff undoubtedly had the right to evict the defendant, not because the latter occupied the house at sufferance but for nonperformance of contract, it being incumbent on the plaintiff to prove in said action that he needed the house in good faith for the purpose of living in it with his family, according to the certificate of eviction.

In *Cerra* v. *González,* 29 P.R.R. 270, we held that when a lessee continues to occupy the house after the lease contract has expired "It clearly appears that he occupies the house without any right and against the will of the owner, but not at sufferance. And this being so, its classification as at sufferance, which, according to jurisprudence, determines the original jurisdiction of the district courts in this class of cases, can not be applied here." See also *Padua* v. *Municipal Court,* 55 P.R.R. 781.

The certificate of eviction issued by the O.P.A. by its own terms authorized plaintiff to bring the action of unlawful detainer in order to occupy the house as his residence, "accord-

---

[2] It was expressly stated in the receipts that the amount of $22 received monthly was for the "rent of the house in Alameda Bo. #30."

ing to the requirements of the local statute." The latter, and not the certificate, determines which court has the proper jurisdiction to take cognizance of said actions.

Up to here we have reproduced the opinion which we originally wrote, for a majority of the Court, on January 22, 1948 and which is now set aside, on motion for reconsideration, by another majority of the Court. We must now add our viewpoints on some of the grounds of the new opinion.

In the first place we believe that *López* v. *District Court*, 67 P.R.R. 163, is clearly distinguishable from the case at bar. Otherwise, we believe it was erroneously decided and should be reversed. That case was based on § 5(a) of the Eminent Domain Act which expressly grants the court power to fix the period within which and the conditions under which the occupants of a condemned property should surrender possession thereof to the expropriating party. We said there that the fact that the parties agreed as to said conditions, among them the payment for the use of the property, did not mean that they had entered into a contract of lease, inasmuch as "their agreement took the place of the order and was therefore related and pursuant to the condemnation proceeding, which remained open until the People obtained possession." And we expressly stressed the fact that "Here the Authority was careful from the beginning to emphasize that it was not leasing the property but was only permitting the petitioner to remain there until he could conveniently leave."

So that in the *López* case, *supra*, the Eminent Domain Act itself authorized the Court to fix the period and the conditions under which the tenant could continue enjoying the property, but the fact that the parties agreed and that no court order was needed, we said: "Did not change the nature of their relationship."

In the case at bar the court has no power, either under the certificate of the O.P.A. or under the Housing Act, to

fix the period and conditions for the surrender of the property and we have decided that they do not purport to create private contractual relations. *Miranda* v. *Jarabo, supra.* But the parties, by their acts, did create new contractual relations: the defendant, by paying the rent, and the plaintiff, by issuing the corresponding receipts and stating that they were for the rent of the house. If the latter act does not constitute one of the ''express acts'' to which Manresa refers, we do not know what name to give it. This is not a question of erroneous or mistaken label given by the plaintiff. In all the receipts issued by him to the defendant he stated that they were ''rent of the house at Alameda Bo. No. 30'', and accepted defendant's checks which had expressly written on it ''payment of rent''. The words ''rent'' (*alquiler*) and ''rental'' (*renta*) have a well-known meaning. The former is *"El precio en que se alquila una cosa"* (The price for hiring a thing) and the latter *"Lo que paga en dinero o en frutos un arrendatario."* (The payment made, whether in money or fruits, by a lessee.) *Diccionario de la Lengua Española de la Real Academia Española,* 16th edition. To hold, therefore, that plaintiff did not know that he was receiving the monthly rental of his house and that his action, together with defendant's, did not renew the contract is to go against the facts as proved.

Furthermore, we wish to correct an involuntary error in the seventh paragraph of this opinion when we said that the rental corresponding to the month of December, 1946 was not paid by the defendant. The truth is that the evidence showed that the defendant tried to pay said rental but plaintiff refused to accept it, and hence it was on that day that he really considered terminated the contract of lease. Under the doctrine laid down in *Cerra* v. *González, supra; Bianchi* v. *Bianchi,* 41 P.R.R. 793; *Padua* v. *Municipal Court, supra,* jurisdiction of the case lay with the municipal court. We should not overlook the fact that the only question in-

volved here is one of jurisdiction. No one questions the right of the plaintiff to oust the defendant by refusing to accept the rental for December, 1946 and by informing the defendant that the new contract of lease was terminated. However, under these circumstances, suit had to commence in the municipal court.

That the acceptance of the rent by the lessor, even in cases of a breach of the contract by the lessee, is a decisive fact for the renewal of the contract and not a mere technical question of erroneous labeling, has been decided by this Court in *Del Toro* v. *The Juncos Central Co.,* 29 P.R.R. 21 and *Morales* v. *Martínez,* 40 P.R.R. 695. This is a well-settled rule in a line of American cases and it has been accepted by the textwriters. See the authorities cited in *Del Toro* v. *Morales, supra,* and those in footnote 2 of § 687 of Williston on Contracts, Vol. 3, page 1980, which lays down the doctrine that the acceptance of rent accruing after breach of contract constitutes a discharge of the breach and it is stated that "this principle was early established in the law of landlord and tenant."

As stated by Walter Shirley Shirley in his work "A Selection of Leading Cases in the Common Law," page 104, cited in *Del Toro* v. *The Juncos Central Co., supra:* "The courts lean against forfeiture; and therefore any positive act of the landlord's, from which it may be inferred that he elected to overlook the breach of covenant, and to continue the tenancy, will be greedily snatched at. The most satisfactory of the acts which operate as a waiver of forfeiture is 'acceptance of rent which has become due since the forfeiture;' and if such rent is accepted, it is of no consequence that the landlord took it under protest and declaring that he did not intend to waive the forfeiture."

Although the question involved herein is different, the general principle applicable should be the same. When plain-

tiff purchased the house and obtained the certificate of eviction he terminated the contract of lease existing between the defendant and the former owner. Nevertheless, after assuming this attitude he collected and accepted the rent of the house. This was a positive and express act on the part of the plaintiff which brought about the renewal of the lease. The certificate of the O.P.A. could not change the legal result of this act.

The case of *Ball* v. *Vilá,* 67 P.R.R. 388, cited by the Court, if anything, shows that we are correct. It is stated therein that "We agree that *the contract for paying a rental of $80 monthly terminated* on March 8, 1944 and that appellee can only recover the reasonable value of the use of the house." (Italics ours.)

It is true that the attorney of Ball erroneously alleged that he was collecting the amount of the rentals accrued subsequent to that date and that the action was entitled an action of debt. However, in view of Rule 81(*b*) of Civil Procedure we disregarded this error in the title of the action.

We do not see any relation between that case and the facts herein. As we said in *Morales* v. *Martínez, supra,* page 699: "The legal consequences which flow from his acceptance of the rent as such *are determined by what he did, not by what he said.* (Authorities)" (Italics ours.) Here plaintiff must suffer the legal consequences of his acts, not only because of what he wrote in the receipts but because of what he did, that is, first, he accepted the rent after having terminated the contract, and later he refused to continue receiving them and terminated the contract for the second time.

As to the point that plaintiff accepted the payment for the "use" of the house and not as "rent" thereof, what is a contract of lease? It is simply to give the *use* of a thing for a specified time and a fixed price. Thus it is defined by

§ 1433 of the Civil Code (1930 ed.) And, finally there can be no doubt that, irrespective of the meaning that a legal mind might want to attribute to some words, empirically, most of the persons in our Island when using the words "rent" and "rental", give them their ordinary and usual meaning, that is, in the sense that they are referring to a contract of lease.

In our opinion the lower court lacked jurisdiction to entertain the case and therefore our original opinion reversing the judgment of the lower court should prevail.